IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| In the Matter of<br><br>DEPARTMENT OF EDUCATION, STATE OF HAWAII,<br><br>      Plaintiff,<br><br>  vs.<br><br>RIA L., by and through her Parent, RITA L.,<br><br>      Defendants. | CIVIL NO. 14-00034 DKW-RLP<br><br>**ORDER AFFIRMING IN PART AND REMANDING DECISION OF THE ADMINISTRATIVE HEARINGS OFFICER** |

**ORDER AFFIRMING IN PART AND REMANDING DECISION OF THE
ADMINISTRATIVE HEARINGS OFFICER**

This is the second appeal in Ria L.'s ("Student") case. At the conclusion of the first appeal to this Court, Judge Ezra issued an Order Vacating and Remanding Decision of the Administrative Hearings Officer ("AHO"), instructing the State to determine whether the allegations of abuse of Student resulted in the denial of a free appropriate public education ("FAPE"). *DOE v. Ria L., et al.*, CV No. 12-00007 HG-KSC, Dkt. No. 27 (D. Haw. July 31, 2012). On December 27, 2013, the AHO found in the affirmative, issuing Findings of Fact, Conclusions of Law and Decision ("Decision"), which held, among other things, that Student was

abused and that such abuse resulted in the denial of FAPE. The Department of Education, State of Hawai'i ("DOE") now appeals that December 27, 2013 Decision. The Court affirms the AHO's determination that it was permissible to take additional evidence on remand and affirms the AHO's decision denying the State's recusal request. However, because the AHO's key underlying determinations of credibility are conclusory and provide no rationale or explanation for this Court to meaningfully review on appeal, the Court remands again with instructions to elaborate and enumerate specific reasons, based on evidence in the record, supporting the AHO's credibility assessments.

## BACKGROUND

This is an appeal of the AHO's decision on remand following District Judge Ezra's July 31, 2012 order ("Remand Order"). *DOE v. Ria L., et al.*, CV No. 12-00007 HG-KSC, Dkt. No. 27 (D. Haw. July 31, 2012). The extensive factual history prior to Judge Ezra's remand and this appeal can be found in that Remand Order and is not repeated here.

Student was 11 years old at the time of the AHO's decision on remand. Since February 2008, she has been eligible to receive special education and related services pursuant to the IDEA under the category of intellectual disability (formerly known as mental retardation). Student attended Kipapa Elementary School ("Home School") for preschool, kindergarten, and grades 1 and 2, up until

2

February 2011 when Parent removed Student from the Home School, and Student began attending Autism Behavior Consulting Group, Inc. Approximately one month later, Student, through her Parent, requested an administrative hearing, alleging that the DOE violated the IDEA by denying her FAPE. Parent made numerous allegations that were disposed of by Judge Ezra and are not at issue here. Relevant here, Parent alleged that Student had been subject to physical, verbal, and psychological abuse and punitive discipline in the classroom at the Home School.

Following a six-day administrative hearing, the Hearings Officer found that procedural and substantive errors in Student's 2009 and 2010 Individualized Education Programs ("IEP") amounted to a denial of FAPE. The DOE appealed the administrative decision. On July 31, 2012, Judge Ezra concluded that the 2009 and 2010 IEPs did not deny Student FAPE and thus vacated the AHO's decision to that effect. Judge Ezra also remanded for a determination on the allegations of abuse—

> Based on the AHO's decision, it appears that the AHO declined to address the abuse allegations in light of her determination that Ria was denied a FAPE on other grounds. Therefore, the Court REMANDS this case to the AHO for the limited purpose of addressing: (1) whether the allegations of abuse in the due process hearing request resulted in the denial of FAPE, and (2) if so, the appropriate remedy for such denial.

Remand Order at 45.

On remand, the AHO denied the DOE's motion to determine the issues on remand on the existing record, and instead, held a further evidentiary hearing.[1] At the additional evidentiary hearing, Barbara Balinben, the Home School paraprofessional trainer, testified for the first time.[2] Balinben testified that the special education teacher, Sheila Izumigawa, and the educational assistant, Kim Boteilho, restrained Student and force fed her because Student had an eating problem and would not eat. Balinben further testified that Student was force fed to the point of vomiting, and that Student was forced to vomit into her own shirt and then forced to wear that shirt through the remainder of the school day. Balinben also testified that this force-feeding and vomiting occurred on a regular basis. Decision at 12–16.

---

[1] During the additional proceedings on remand, the DOE also moved to recuse the AHO, which the AHO denied. Decision at 5.

[2] As Judge Ezra noted, in the initial 6-day administrative hearing,

> The AHO heard testimony from the following witnesses: (1) Sheila Izumigawa, Ria's Special Education teacher for the 2009-2010 and 2010-2011 school years, (2) Gayle Ishikawa, the District Education Specialist for the Central Oahu School District, (3) Kim Boteilho, the Home School Educational Assistant, (4) Lynn Lee, the Home School Student Services Coordinator, (5) Amy Weisch, the CEO of Autism Behavior Consulting Group and behavior analyst who assessed Ria in February 2011, (6) Karen Tyson, a Licensed Clinical Psychologist who performed a neuropsychological evaluation of Ria in May 2011, (7) Rita Lopez, Ria's mother, (8) Kim Machida, the DOE Psychological Examiner, (9) Dawn Fukui-Mayeda, the DOE Speech Language Pathologist, (10) Julie Broussard Suenaga, Ria's General Education Teacher for the 2010-2011 school year, and (11) Joseph Acklin, a Licensed Psychologist and Supervisor of School Psychologists and Psychological Examiners for the Central Oahu School District.

Remand Order at 9–10. Ms. Balinben did not testify in the 6-day administrative hearing.

Izumigawa and Boteilho did not testify at the additional evidentiary hearing on remand, but they did testify as part of the prior 6-day administrative hearing. In that previous testimony, both Izumigawa and Boteilho denied the allegations of force-feeding. While Izumigawa and Boteilho confirmed that Student often refused to eat, and sometimes vomited, they plainly denied any allegations of force-feeding or other mistreatment by themselves or anyone else interacting with Student. Decision at 17–20.

In light of this inconsistent and irreconcilable testimony, the AHO discussed the credibility of Balinben, Izumigawa, and Boteilho:

> The AHO listened to the testimony of all of the witnesses in this case.
> The testimony of [Izumigawa] and [Boteilho] stand in stark contrast with the testimony of [Balinben].
> In order to resolve this issue, and the question of credibility, the AHO weighed the sworn testimony very carefully to determine whether and to what extent each witness should be believed. In deciding the appropriate weight of each witness's testimony, the AHO considered the following factors:
>
>> (a) The witness's demeanor;
>> (b) The witness's manner of testifying;
>> (c) The witness's candor or frankness, or lack thereof;
>> (d) The witness's interest, if any, in the result of the case;
>> (e) The witness's relation, if any, to a party;
>> (f) The witness's means and opportunity of acquiring information;
>> (g) The probability or improbability of the witness'[s] testimony;
>> (h) The extent that the witness is supported or contradicted by other evidence; and

>> (i) The extent to which the witness has made
>> contradictory statements.
>
> When weighing the effect of inconsistencies, whether the inconsistencies were within a witness's own testimony or between different witnesses, the AHO considered whether the inconsistencies were important matters or unimportant details, and whether the inconsistencies arose from innocent error or deliberate fabrication.
>
> Based on the observation of the sworn testimony and on the consideration of the foregoing factors, the AHO finds the testimony of [Balinben] to be credible, and the testimony of [Izumigawa] and [Boteilho] to be not credible, and as a result, finds that the abuse of Student in Classroom "X" occurred.

Decision at 49. The only explanation provided by the AHO for her adverse credibility determination of Izumigawa and Boteilho was the following footnote:

> The sworn testimony of [Izumigawa] and [Boteilho] were riddled with inconsistencies.
>
> This included inconsistencies within their own statements, inconsistencies within the statements of the other witnesses, and inconsistencies with the documentary evidence.
>
> The AHO found that the inconsistencies in the testimony of [Izumigawa] and [Boteilho] were related to important matters, and not unimportant details.

Decision at 49.

The DOE's subsequent appeal of the AHO's decision on remand is presently before the Court.

6

# STANDARD OF REVIEW

## I. IDEA Overview

"The IDEA is a comprehensive educational scheme, conferring on disabled students a substantive right to public education and providing financial assistance to enable states to meet their educational needs." *Hoeft ex rel. Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1300 (9th Cir. 1992) (citing *Honig v. Doe*, 484 U.S. 305, 310 (1988)). It ensures that "all children with disabilities have available to them a free appropriate public education [("FAPE")] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living[.]" 20 U.S.C. § 1400(d)(1)(A). The IDEA defines FAPE as special education and related services that --

> (A) have been provided at public expense, under public supervision and direction, and without charge;
> (B) meet the standards of the State educational agency;
> (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and
> (D) are provided in conformity with the individualized education program required under section 1414(d) of this title.

20 U.S.C. § 1401(9). To provide a FAPE in compliance with the IDEA, a state educational agency receiving federal funds must evaluate a student, determine whether that student is eligible for special education, and formulate and implement an IEP. 20 U.S.C. § 1414. The IEP is to be developed by an "IEP Team"

7

composed of, *inter alia*, school officials, parents, teachers and other persons knowledgeable about the child.  20 U.S.C. § 1414(d)(1)(B).

"Procedural flaws in the IEP process do not always amount to the denial of a FAPE."  *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 909 (9th Cir. 2009) (citations omitted).  Once a procedural violation of the IDEA is identified, the court "must determine whether that violation affected the substantive rights of the parent or child."  *Id.* (citations omitted).  "[P]rocedural inadequacies that result in the loss of educational opportunity, or seriously infringe the parents' opportunity to participate in the IEP formulation process, clearly result in the denial of a FAPE."  *Id.* (alteration in original) (citations and quotation marks omitted).

Compliance with the IDEA does not require school districts to provide the "absolutely best" or "potential-maximizing" education.  *J.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 439 (9th Cir. 2010) (citation and internal quotation marks omitted).  Rather, school districts are required to provide only a "'basic floor of opportunity.'"  *Id.* (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 201 (1982)).  The FAPE need only be "appropriately designed and implemented so as to convey [the][s]tudent with a meaningful benefit."  *Id.* at 433 (citations and quotation marks omitted).

## II. Standard of Review

The standard for district court review of an administrative decision under the IDEA is set forth in 20 U.S.C. § 1415(i)(2)(C), which provides:

In any action brought under this paragraph, the court—

> (i) shall receive the records of the administrative proceedings;
>
> (ii) shall hear additional evidence at the request of a party; and
>
> (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

This standard requires that the district court give "'due weight'" to the administrative proceedings. *Capistrano*, 556 F.3d at 908 (quoting *Rowley*, 458 U.S. at 206) (some citations omitted). The district court, however, has the discretion to determine the amount of deference it will accord the administrative ruling. *J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 438 (9th Cir. 2010) (citing *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir. 1987)). In reaching that determination, the court should consider the thoroughness of the hearings officer's findings, increasing the degree of deference where said findings are "'thorough and careful.'" *Capistrano*, 556 F.3d at 908 (quoting *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995)).

The district court should give "substantial weight" to the hearings officer's decision when the decision "evinces his careful, impartial consideration of all the evidence and demonstrates his sensitivity to the complexity of the issues

9

presented." *Cnty. of San Diego v. Cal. Special Educ. Hearing Office*, 93 F.3d 1458, 1466–67 (9th Cir. 1996) (citation and quotation marks omitted). Such deference is appropriate because "if the district court tried the case anew, the work of the hearing officer would not receive 'due weight,' and would be largely wasted." *Wartenberg*, 59 F.3d at 891. "[T]he ultimate determination of whether an IEP was appropriate," however, "is reviewed de novo." *A.M. ex rel. Marshall v. Monrovia Unified Sch. Dist.*, 627 F.3d 773, 778 (9th Cir. 2010) (citing *Wartenberg*, 59 F.3d at 891).

> A court's inquiry in reviewing IDEA administrative decisions is twofold:
>
> First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? [*Rowley*, 458 U.S. at 206–07] (footnotes omitted). If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more. *Id.* at 207.

*J.L. v. Mercer Island Sch. Dist.*, 592 F.3d 938, 947 (9th Cir. 2010) (some citations omitted).

The burden of proof in IDEA appeal proceedings is on the party challenging the administrative ruling. *Hood v. Encinitas Union Sch. Dist.*, 486 F.3d 1099, 1103 (9th Cir. 2007) (citations omitted). The challenging party must show, by a preponderance of the evidence, that the hearing decision should be reversed. *J.W.*, 626 F.3d at 438 (citation omitted).

## **DISCUSSION**

As a threshold matter, the DOE renews its arguments made to the AHO on remand that the AHO violated the "rule of mandate" by holding an evidentiary hearing to take additional evidence related to the allegations of abuse. According to the DOE, Judge Ezra did not instruct the AHO to take additional evidence on remand.

While it is true that Judge Ezra did not instruct the AHO to take additional evidence, it is "more true" to state that Judge Ezra's remand order did not address the issue of additional evidence. Stated simply, Judge Ezra recognized that the AHO had not reached a conclusion on the allegations of abuse and whether that alleged abuse, if it occurred, resulted in a denial of FAPE for Student. Therefore, Judge Ezra remanded the matter to the AHO to consider this question in the first instance. There was no directive from Judge Ezra either way as to whether the AHO should or should not consider additional evidence. Without a clear mandate to the contrary, the Court cannot conclude that it was error for the AHO to decide to hold an additional evidentiary hearing on remand.

As a second threshold matter, the DOE contends that the AHO should have recused herself from the remand proceedings. The DOE contends that the AHO "prejudged the case and had developed an emotional connection that clouded her judgment." Opening Br. at 18. The DOE also contends that the AHO made a

11

"litany" of erroneous legal rulings that demonstrate bias and further support recusal. *Id*. at 18-20.

The Court disagrees for several reasons. First, cause for recusal generally stems from extrajudicial sources. *See Pesnell v. Arsenault*, 543 F.3d 1038, 1043 (9th Cir. 2008). No such extrajudicial source is even alleged here. To the contrary, the DOE's allegations stem solely from the AHO's conduct during the administrative proceedings. Second, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994).

> In and of themselves . . . they cannot possibly show reliance upon an extrajudicial source. . . . Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Id*. Third, the examples cited by the DOE reveal nothing improper about the AHO's conduct, nor do they cast light on any extrajudicial bias. The examples are certainly suggestive of the AHO's disagreement with a number of the DOE's legal contentions, disagreements that were borne out in the AHO's December 2013 findings and conclusions. But none of the conduct alleged persuades this Court

12

that the AHO has taken any action that might give rise to an appearance of impropriety or reasonably call into question her impartiality.

Turning to the AHO's actual conclusions after hearing additional evidence on remand, the Court determines that the AHO provided insufficient explanation for the key credibility assessments of Balinben, Izumigawa, and Boteilho. Without a basis to review those credibility assessments, the Court can go no further in reviewing the merits of the remand decision. Thus, the Court must remand again for further explanation.

As noted in the background section above, the AHO laid out numerous factors that should be considered in determining the credibility of witnesses. Further, the AHO noted that she considered these factors in analyzing the conflicting testimony of Balinben, Izumigawa, and Boteilho, testimony that was critical to the AHO's finding of abuse. Decision at 49. However, after noting the factors to consider to determine credibility, and stating that she had considered those factors, the AHO jumped to a single conclusory sentence that she was crediting the testimony of Balinben and discrediting the testimony of Izumigawa and Boteilho:

> Based on the observation of the sworn testimony and on the consideration of the foregoing factors, the AHO finds the testimony of [Balinben] to be credible, and the testimony of [Izumigawa] and [Boteilho] to be not credible, and as a result, finds that the abuse of Student in Classroom "X" occurred.

13

Decision at 49.  The only window into the underlying basis for these credibility determinations comes in the AHO's footnote to the quoted language above, which states:

> The sworn testimony of [Izumigawa] and [Boteilho] were riddled with inconsistencies.
>
> This included inconsistencies within their own statements, inconsistencies within the statements of the other witnesses, and inconsistencies with the documentary evidence.
>
> The AHO found that the inconsistencies in the testimony of [Izumigawa] and [Boteilho] were related to important matters, and not unimportant details.

Decision at 49.  However, the AHO did not provide a single specific example of any such inconsistency, and the Court will not speculate on what evidence the AHO may have relied on.  Without some specific reason based on actual evidence in the record, and given the critical importance of the AHO's credibility assessment on her ultimate findings, the Court is left with no ability to conduct meaningful judicial review of the credibility determinations of Balinben, Izumigawa, and Boteilho.[3]  *See, e.g., Benton v. Barnhart*, 331 F.3d 1030, 1040 (holding that in the social security context, the administrative law judge ("ALJ")

---

[3]The Court recognizes the "general principles of administrative law which give deference to the unique knowledge and experience of state agencies while recognizing that a[n A]HO who receives live testimony is in the best position to determine issues of credibility." *Amanda J. v. Clark Cty. Sch. Dist.*, 267 F.3d 877, 889 (9th Cir. 2001).  The Court is prepared to give the appropriate deference to the AHO's credibility determinations.  However, without any explanation of the reasons for such determinations, there is nothing for the Court to even defer to.

may reject the testimony of witnesses in favor of others "if the ALJ makes findings setting forth specific legitimate reasons based on substantial evidence in the record.").

## **CONCLUSION**

The Court affirms the AHO's decision to hold an additional evidentiary hearing on remand and to deny the DOE's motion to recuse the AHO from the remand proceedings. The Court now remands to the AHO for further explanation of the AHO's December 27, 2013 credibility findings and conclusions with respect to abuse witnesses, including, but not limited to, Balinben, Izumigawa, and Boteilho. The AHO must enumerate specific reasons based on the evidence in the record to support her credibility assessments.

IT IS SO ORDERED.

DATED: December 15, 2014 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

DOE v. RIA L., et al.; CV 14-00034 DKW-RLP; ORDER AFFIRMING IN PART AND REMANDING DECISION OF THE ADMINISTRATIVE HEARINGS OFFICER